### T. G. GAYLORD & Co. *v.* IMHOFF AND ANOTHER, Partners.*

Individual members of an insolvent copartnership, not the owners of other property, are severally entitled to the exemption allowed by the State "Homestead Laws," out of the partnership fund, even as against creditors of the firm.

The object of exemption and homestead laws discussed and defined.

In this cause judgment was recovered, the property of the defendants sold on execution, and the proceeds were in court for distribution.

A judgment was made by the judgment debtors, claiming the benefit of the exemption allowed them by law as heads of families and residents of Ohio, setting out that neither of them were the owners of homesteads, or possessed of other

---

* Though this case was decided at a prior term to the one with which these reports were begun, but at the request of members of the bar who deemed the questions contained to be of great interest and importance, it is inserted here.

property, as provided by the amendment of May 22, 1858, to the "Homestead Law."

An agreed statement of facts was filed by the counsel for the parties, " that all the property levied on and sold was partnership property, including the leasehold; and that the affidavit and demand of exemption by the defendants were filed by the defendants with the sheriff before the sale, setting forth that they were heads of families, and not the owners of homesteads or any other property."

The copartnership creditors resisted the claim on the ground the property belonged exclusively to the creditors of the firm, and was subject to the payment of all the firm debts before the individual partners could have any legal right to the joint assets.

All the questions arising under the motion were reserved for the opinion of the court in General Term.

*Matthews & Ramsey,* for the motion.

*Challen & Mitchell,* contra.

STORER, J. As a general rule, the objection urged to the right of partners to a share of the joint assets before the partnership debts are satisfied is the true one; but the case before us is one where both the partners, who were originally interested in the fund now in court, apply for the exemption allowed by law; neither can be said to sustain the same relation to the other, which would exist, if one were solvent and the other insolvent, for in such case the burden which ought to be borne by both would be imposed upon him alone who had the ability to discharge it.

A copartnership creditor, as such, has no better lien on the property of the firm than the creditor of an individual partner. To use the language of the books, he can only work out whatever right he may assert through the partners themselves. And hence it is in marshaling the fund where all the parties are before the court, we are permit-

ted to appropriate it in the first place to the creditors of the firm.

In a contest between creditors where no intervening right exists, there can be no difficulty in coming to a correct conclusion. We are asked, however, to hold that the homestead and exemption laws, which were enacted for a kindred purpose, can not apply to a case like that at bar, on the assumption that when capital has become invested in a joint adventure, either the identity of the original individual owner, with his share of the common property, is lost, or he must await the winding up of the partnership, when all the liabilities having been discharged, the statutory privilege may then be allowed him. This argument would defeat the object of the law, in that the debtor, if owing as an individual, would be permitted to enjoy the exemption, while his joint liability with others would give the creditor the power to take the last farthing of his substance.

It is urged that dower will not be granted where the estate in which it is asked belongs to a partnership, until all the liabilities of the firm have been met, and we admit the rule, though it has been modified by late decisions; but this has been determined on the ground that the property, though legally vested by deed in the partners, is held nevertheless in trust for the payment of debts. This rule is not now, nor has it ever been the law in Ohio as to personalty; no matter how large the decedent's indebtedness may be, his widow is allowed a reasonable sum for her year's support, to the exclusion of all creditors. The property sold by the sheriff, the proceeds of which are now in court, was machinery in a manufacturing establishment and a leasehold for a term of years.

Can there be any greater equity, on the part of those to whom a copartnership is indebted, than that the creditors of an individual might claim, when we are asked to give a construction to a statute, the object of which, before it can be fully carried out, requires us so to interpret it as to effect the humane purpose for which it was enacted? We

Gaylord & Co. v. Imhoff and another.

regard the whole series of laws on this subject as remedial; not as restricting a prior right, but as reserving to the unfortunate debtor some portion of the wreck of his property to save him from immediate want and encourage future effort. This is the view taken by the New York courts in deciding the policy of their exemption laws. *Carpenter* v. *Herrington*, 25 Wendell, 370 ; *Ford* v. *Johnson et al.*, 34 Barb. 365; *Robinson* v. *Wiley*, 15 N. Y. 494. Homestead estates, as well as the present system of exemptions which exists in twenty-nine states of the Union, owe their creation to State legislation only. By the common law there is no analogous interest secured to a debtor. If we should trace the progress of the now liberal protection afforded to families from the exactions of a husband, or a father, or son, we should find matter for interesting inquiry and study. We need not refer to the laws of the twelve tables, giving the debtor's body to those he owed to be divided among them; nor yet to the barbarous claim asserted as late as the present century to arrest the body of an insolvent after death; nor to the power, until within the last twenty-five years allowed even in Ohio to the creditor in any case, without oath, to sue out a capias as the first process in an ordinary suit.

Imprisonment for debt in all its forms, except for the frauds of the debtor, is now abolished, while the remedy even in the cases allowed by statute, is seldom resorted to; and we may apply the same remarks to the privilege now given to the debtor and his family to retain a portion of his property exempt from execution. From the wearing apparel, a few articles of furniture, the school books, a domestic animal or two, the policy of our legislation has steadily increased the exemption, until, by the statute of April 9, 1869, $500 is allowed the debtor not the owner of a homestead, but who is the head of a family, in addition to the ordinary exemption from sale on executions.

To carry out the policy so humanely adopted, and which has been so universally approved, where the purpose is to confer a great public benefit we must divest the questions

before us of all legal technicalities, and look directly to the important end our legislators must have intended to accomplish by the various statutes they have enacted. If it is true, the fact of a partnership once formed excludes all individual interest in the property it may hold, that to a manufacturing establishment, or any other association of craftsmen who may unite for a certain object, none of the statutes we have referred to apply; while if the parties have individually pursued the same employment they could be protected in their several exemption rights, then it must be confessed the law can not have effected its purpose.

To admit the personal privilege, and deny it to the same man when a partner, must discourage all voluntary unions whereby capital may be increased and business expanded, for such associations will virtually absorb the personality of the several members into the mere legal entity it has produced.

Hence it will be if one carrying on business on his own account, in winding up his affairs, find there is no sufficient fund to pay creditors, he will nevertheless be allowed the entire exemption if it should include his whole assets; yet if he become a partner he has forfeited his statutory right.

The argument which assumes such a rule to be the true meaning of the law, is defended mainly on the ground of *ab inconvenienti;* but this maxim, in the interpretation of statutes, is seldom applied, and never where the language of the law is plain and its terms readily understood. If the law is constitutional it must stand as the rule of our decision.

We find but few reported decisions upon the point in controversy, though there are many in which individuals have been the party applying for the exemption and the question before us does not arise.

In *Radcliff* v. *Wood*, 25 Barb. 52, the Supreme Court of New York held that joint ownership of property did not exclude the right of exemption; and the Court of Appeals in *Stewart* v. *Brown*, 37 N. Y. 350, decided the exact question. They say, "The language of the act should be con-

strued in harmony with its humane and remedial purpose. Its design was to shield the poor, and not to strip them. The interest it seeks to protect is that belonging to the debtor, be it more or less."

A contrary opinion has been given by the Supreme Court of Pennsylvania, in *Bonsall et al.* v. *Comly,* 44 Penn. 442; but we are not convinced by the reasoning of the judge, who places his objection to the debtor's claim upon the same ground the counsel for the creditors have urged in argument before us.

We are better satisfied with the decision of the New York court for the soundness of their reasoning, and the practical recognition of what we believe is the only true rule by which statutes of exemption are to be interpreted.

Such would seem to be the policy of the present bankrupt law. By the 14th section, 14 Statutes at Large, 522, there is secured to the bankrupt personal property not exceeding $500, to be excluded from the general assignment of his effects; while the 36th section, which refers to partnerships and corporations, makes no distinction between that class of debtors and individuals, no language being used restricting in express terms, or by fair implication, the privileges secured by section 14.

On a careful review of all the provisions of our homestead and exemption laws with whatever light we can obtain from adjudged cases, taking into consideration the purpose which the legislature intended to accomplish, we are led to the conclusion that we can not exclude partners from the privilege of claiming the statutory exemption in the same manner, and for the same reason that we are bound to extend it to the individual debtor.

There may be an apparent conflict between our ruling and the law, which in ordinary cases defines what are partnership assets and how they shall be administered, more especially with the principle that the obligations of the joint relation must first be met, before there is any such interest in either of the parties as can be charged with their

individual debts; but these difficulties are removed when we regard the object of what are sometimes termed "the modern innovations on the rights of creditors," but what in reality are the consequences of a more advanced civiliza- tion. It is true the debtor may retain a small portion of the property, for he is not only allowed still to live, but to look forward to the time when by industry and economy he may retrieve his fortunes. Yet he is not, as by the bankrupt law, forever discharged from his debts; his creditors may still claim the future reward of his labor. The exemption is to provide for present necessities, to encourage hope for the future, to show by awarding the privilege that the insolvent is not forgotten by the law, but continues to be a citizen and a man.

We are all of opinion that the exemptions asked should be allowed, the amount of each to be fixed by the statute of 1850, with the amendment of March 22, 1858, and the case is remanded to Special Term, that the proper entry may be made fixing the sum for each claimant.